UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KERRY JOHNELLE ADAMS,** } | |
| } | |
| **Petitioner,** } | |
| } | |
| v. } | Case No.: 5:20-cv-08008-RDP |
| } | 5:16-cr-00221-RDP-JHE-1 |
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Respondent.** } | |

**MEMORANDUM OPINION**

Before the court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence. (Doc. # 1).[1] The Motion has been fully briefed. (Docs. # 1, 9, 19). After careful review, and for the reasons discussed below, the Motion is due to be denied in part and an evidentiary hearing is due to be set.

**I.      Background**

Petitioner Kerry Johnelle Adams was convicted at trial of conspiracy to possess with intent to distribute five kilograms or more of cocaine hydrochloride on March 16, 2017. (Cr. Doc. # 48). Because the government established certain of his prior convictions pursuant to 21 U.S.C. §§ 841(b) and 851, Petitioner was sentenced to life in prison. (Cr. Docs. # 6; 60 at 2). On July 10, 2017, Petitioner filed a notice of appeal from his final judgment as to his conviction and sentence. (Cr. Doc. # 62). The Eleventh Circuit affirmed his conviction and sentence in an unpublished opinion. *United States v. Adams*, 756 F. App'x. 884 (11th Cir. 2018). Petitioner did not seek certiorari from the Supreme Court.

---

[1] Citations to the docket of the present civil case will be styled "Doc. #" while citations to the docket of the associated criminal case (5:16-cr-00221-RDP-JHE-1) will be styled "Cr. Doc. #."

On February 24, 2020, Petitioner filed this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. # 1). The basis of Petitioner's motion centers on his claims of ineffective assistance of counsel and prosecutorial misconduct. Petitioner makes five assertions in support of his contention that the counsel he received was constitutionally deficient. (*Id.*). Additionally, Petitioner makes three assertions in support of his contention that he was subject to prosecutorial misconduct. (*Id.*).

## II.     Standard of Review

Section 2255 authorizes a federal prisoner to move in the court of conviction to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). Such a motion is subject to heightened pleading requirements, which mandate that the motion must specify all the grounds of relief and state the facts supporting each ground. *See* Rules 2(b)(1) & (2), Rules Governing § 2255 Proceedings; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994). When a § 2255 motion is filed, it is subject to preliminary review, at which time the court is authorized to dismiss the motion summarily "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing § 2255 Proceedings. A § 2255 movant is not entitled to a hearing, much less post-conviction relief when his claims fail to state a cognizable claim or amount only to conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible. *See Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001).

The standard that governs ineffective assistance of counsel claims derives from *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court established a two-prong

2

test for adjudicating ineffective assistance of counsel claims; both prongs of the test must be met for a petitioner to succeed. *Id.* at 687. First, a petitioner must show that counsel's performance was deficient, *i.e.*, the performance was outside the range of professionally competent assistance. *Id.* The proper measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688. Unless a petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he or she cannot show that counsel's performance was constitutionally deficient. *Id.* at 689. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. [The court asks] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted[.]" *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992); *see also Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) (stating that "perfection is not the standard of effective assistance").

Second, a petitioner must demonstrate prejudice. That is, in addition to establishing cause, he is also required to show there is a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because Petitioner must meet both parts of the *Strickland* test, the court need not address the performance prong if he cannot meet the prejudice prong, and vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

**III.   Discussion**

Because Petitioner filed his motion within one year of the judgment becoming final, his motion is timely. *See* 28 U.S.C. § 2255(f)(1). For the reasons discussed below, Petitioner's motion

is due to be denied in part. An evidentiary hearing is required to resolve two of Petitioner's five ineffective assistance claims.  But, all his other claims -- the other three ineffective assistance claims and both of his prosecutorial misconduct claims -- are due to be dismissed.

### A.     Petitioner's Ineffective Assistance of Counsel Claims

Petitioner asserts several claims of ineffective assistance against trial counsel. (Doc. #1 at 12-29). First, Petitioner alleges that his counsel failed to conduct a proper investigation into the facts and law of the case. (*Id*. at 12). Second, Petitioner contends that counsel failed to propose a jury instruction on venue. (*Id*. at 14). Third, Petitioner suggests that counsel failed to seek a continuance of Petitioner's sentencing hearing while the First Step Act was being deliberated in Congress. (*Id*. at 19). Next, Petitioner argues that counsel failed to properly negotiate for or inform him of a plea deal. (*Id*. at 21). Finally, Petitioner maintains that counsel failed to file a motion to suppress cell-site data that was collected in violation of the Fourth Amendment or to object to the data being introduced at trial. (*Id*. at 24).

Petitioner's claims alleging failure to conduct a proper investigation, failure to propose a jury instruction on venue, and failure to seek a continuance are without merit. Petitioner's claims alleging failure to suppress or object to the production of cell-site data and counsel's failure to negotiate or present him with the possibility of a plea deal raise factual questions that require an evidentiary hearing to resolve. The court addresses each of these matters in turn.

### i.     Counsel's Alleged Failure to Conduct a Proper Investigation

Petitioner asserts that counsel failed "to conduct a proper investigation into the facts and law surrounding [his] case." (Doc. #1 at 12).  Petitioner contends that counsel was ineffective in (1) failing to file additional pre-trial motions, and (2) failing to object to the introduction of Rule

4

404(b) evidence. Both of these arguments fail to satisfy both the performance and prejudice prongs of an ineffective assistance claim.

Petitioner alleges that counsel was ineffective due to her failure to file additional pretrial motions, but he does not specify which motions counsel should have filed.[2] Thus, Petitioner fails to plead facts that establish prejudice and entitle him to an evidentiary hearing. *See, e.g.*, *Tejada v. Dugger*, 941 F.2d 1551, 1559 ("A petitioner is not entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics[.]") (citations and internal quotation marks omitted). Because Petitioner cannot establish prejudice on claims "unsupported by specifics," counsel's failure to file additional pretrial motions cannot constitute ineffective assistance. *Id.*

Regarding counsel's alleged failure to object to the 404(b) evidence, the court first notes that counsel did in fact object to some of the 404(b) evidence, specifically the testimony of Todd Smith, although counsel's objection was overruled. (Cr. Doc. # 77 at 4-13). While Petitioner asserts that if "a proper objection [had] been made, it is highly probable that the court would have sustained such an objection[,]" Petitioner does not explain how counsel's objection was deficient. (Doc. # 1 at 13). The mere fact that the court overruled counsel's objection is insufficient to show that counsel was ineffective.

With respect to the 404(b) evidence to which counsel did not object, specifically the testimony of two West Baton Rouge law enforcement officers, counsel strategically forewent objecting to this evidence, stating that, in her view, the testimony was "helpful to [Petitioner's] defense." (Cr. Doc. # 77 at 15). Petitioner even affirmed to this court that he understood and agreed

---

[2] Under a separate ineffective assistance of counsel claim, Petitioner contends that counsel failed to "file a motion to suppress cell-site location data obtained in violation of the Fourth Amendment." (Doc. #1 at 24). The court addresses this claim subsequently in its opinion.

with counsel's decision not to object to this testimony. (Cr. Doc. # 77 at 16-23). "The Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994). To show that a strategic decision by counsel constitutes deficient performance, a petitioner "must meet the onerous burden of demonstrating that *no* competent counsel would have taken the action that his counsel did take." *Taylor v. Sec'y, Fla. Dept. of Corr.*, 760 F.3d 1284, 1298 (11th Cir. 2014) (citations and internal quotation marks omitted) (emphasis in original).

Here, the testimony at issue could be viewed in a manner that supported Petitioner's defense that he had participated only in "hand-to-hand transactions of rather small quantities of crack cocaine" rather than conspiring to traffic several kilograms of cocaine. (Cr. Doc. # 77 at 15). Given that the testimony supported Petitioner's defense, counsel had sound tactical reasons to forego an objection. As a result, Petitioner has failed to meet his burden of proving that "*no* competent counsel" would have foregone objecting to this testimony and fails to establish deficient performance. *Taylor*, 760 F.3d at 1298 (emphasis in original). Because Petitioner has not shown that counsel's performance was constitutionally deficient, the court need not consider whether he was prejudiced by that performance. As such, Petitioner's first claim of ineffective assistance of counsel is due to be denied.

    **ii.**    **Counsel's Failure to Propose a Jury Instruction on Venue**

Petitioner next argues that "counsel was ineffective for failing to propose a jury instruction on venue." (Doc. # 1 at 14). This claim is without merit, as Petitioner cannot establish either deficient performance or prejudice.

When an offense is "committed in more than one district," venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. Thus, "in a

conspiracy case, venue is proper in any district where an overt act was committed in furtherance of the conspiracy." *United States v. Smith*, 918 F.2d 1551, 1557 (11th Cir. 1990). The government need only support its choice of venue by a preponderance of the evidence. *Id.* Here, the evidence clearly supports the government's choice of venue. At trial, Marcus Lampkin testified that he bought at least 30 kilograms of cocaine from Petitioner and transported the cocaine while making multiple trips to Decatur, Alabama, where he broke the controlled substances down and sold them. (Cr. Doc. #76 at 31-32, 37, 48, 64). Danny Lampkin also testified that for six to seven months, he traveled to Louisiana to pick up cocaine from Petitioner and bring the drugs back to Alabama. (Cr. Doc. # 77 at 40-42, 45). This indicates that overt acts in furtherance of the conspiracy occurred in the Northern District of Alabama and thus that venue in this district was appropriate. Because venue was proper, counsel's "failure to propose a jury instruction on venue" does not constitute deficient performance. (Doc. # 1 at 14).

Moreover, counsel's decision not to challenge venue was a strategic decision consistent with Petitioner's theory of defense. Petitioner's theory of defense did not contest the existence of a conspiracy in the Northern District of Alabama, but rather asserted that Petitioner was simply not part of the conspiracy. (Cr. Doc. # 78 at 140, 143-45). An attorney's selection of a theory of defense is a strategic decision, and the court affords counsel high deference in making such strategic decisions. *See Spaziano*, 36 F.3d at 1039. Thus, counsel's decision not to dispute venue does not constitute deficient performance.

But, even assuming counsel performed deficiently in failing to challenge venue (and to be clear she did not), Petitioner cannot establish prejudice. Petitioner suggests that because the jury asked why Petitioner was charged in the Northern District of Alabama, it likely would have found venue improper if instructed on the subject by the court. (Doc. # 19 at 4). However, any venue

charge would have instructed the jury that venue is proper "in any district where an overt act was committed [by any conspirator] in furtherance of the conspiracy." *Smith*, 918 F.2d at 1557. Given the evidence in this case, including the testimony of Marcus and Danny Lampkin discussed above, there is no reasonable probability that the jury would have found venue improper here.

      **iii.    Counsel's Failure to Seek a Continuance in Anticipation of the First Step Act or Certiorari Following its Passage**

Petitioner next claims that "counsel was ineffective for failing to seek a continuance of [his] sentencing hearing while the First Step Act was impending enactment." (Doc. # 1 at 19). Petitioner argues that, had counsel sought such a continuance, he "would have been subject to a mandatory minimum 25-year sentence versus the mandatory minimum life sentence he received." (Doc. #1 at 20).

An attorney does not perform deficiently merely because she fails to anticipate changes in the law. *See Spaziano*, 36 F.3d at 1039 ("[R]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.") (quotation marks and brackets omitted); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in law."). Here, Petitioner was sentenced in June 2017. (Cr. Doc. # 60). The First Step Act was enacted on December 21, 2018, a year and a half after Petitioner's sentencing. *Pub. L. No. 115-391, 132 Stat. 5194, 5194-249* (2018). Given the time period between Petitioner's sentencing and the enactment of the First Step Act, counsel was not deficient for failing to anticipate the law's passage and seek a continuance.

Petitioner replies that "at the time of sentencing, there was overwhelming support in both houses of Congress for sentencing reform" and that President Trump had "stated his likeliness to sign into law sentencing reform when it reached his desk for approval." (Doc. # 19 at 5). Even

8

assuming that the pre-legislation support for sentencing reform was just as strong as Petitioner claims, the First Step Act had not yet passed and was not certain to pass at the time of Petitioner's sentencing. Only a small fraction of proposed legislation is ever enacted. *See Statistics and Historical Comparison*, GOVTRACK (last visited Aug. 2, 2022, 12:50 p.m.), https://www.govtrack.us/congress/bills/statistics. Regarding the First Step Act in particular, legal scholars noted that, despite bipartisan support for sentencing reform, the law was "surprising" and its enactment "unlikely." *See* Amy B. Cyphert, *Reprogramming Recidivism: The First Step Act and Algorithmic Prediction of Risk*, 51 SETON HALL L. REV. 331, 333 (2020); Kara Gotsch & Marc Mauer, *A Step in the Right Direction on Criminal Justice Reform*, 76 N.Y.U. ANN. SURV. AM. L. 397, 397 (2021). Whatever an attorney's duty may be to provide effective assistance to her client, it does not involve looking into some special crystal ball to determine what Congress and the President may do with potential legislation. Given the uncertainty of the First Step Act's enactment at the time of Petitioner's sentencing, counsel did not perform deficiently by failing to seek a continuance.

In his reply brief, Petitioner argues -- for the first time -- that counsel was also constitutionally deficient in failing to seek a writ of certiorari from the Supreme Court. (Doc. # 19 at 6). This argument also lacks merit. "The right to counsel at trial is guaranteed by the Sixth Amendment, but the Fifth Amendment due process clause governs the right to counsel for appellate proceedings." *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008) (citing *Ross v. Moffitt*, 417 U.S. 600, 610-11 (1974)). "Due process does *not*, however, guarantee a constitutional right to counsel for a litigant seeking to file a certiorari petition in the United States Supreme Court." *Id.* (Citing *Ross*, 417 U.S. at 617-18) (emphasis in original). Thus, because Petitioner lacked a constitutional right to counsel at the certiorari stage, he "could not be deprived of the

effective assistance of counsel by his retained counsel's failure to file [for Supreme Court review]." *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982). Because there is clear and binding precedent prohibiting this court from finding ineffective assistance of counsel based upon either of Petitioner's arguments, this claim fails.

### iv. Counsel's Alleged Failure to Challenge the Introduction of Cell-Site Data Records

Petitioner next claims that counsel was ineffective in failing to file a motion to suppress cell-site data that he alleges was obtained in violation of the Fourth Amendment. (Doc. # 1 at 21-24). Alternatively, he argues that counsel was ineffective in failing to object to its introduction at trial. (*Id.*). The government responds that, even if counsel's performance was deficient, he cannot establish prejudice because the record indicates that the data was properly obtained. In support of this contention, the government points to the testimony of F.B.I. Special Agent Wayne Gerhardt that "search warrants were requested for the historical cell[-]cite records." (Cr. Doc. # 38 at 30-31). Petitioner replies that "[t]he mere allegation by an F.B.I. agent at a detention hearing that the evidence was obtained by a warrant is not sufficient to overcome [Petitioner's] Fourth Amendment Challenge" and flatly asserts that "[t]here was no warrant." (Doc. # 19 at 9).

Contrary to the government's assertion, failure to challenge the introduction of unlawfully obtained evidence would likely establish prejudice. The record offers little to reconcile the conflict between the government witness's testimony and Petitioner's contention that there was no warrant. As such, the question of whether counsel was ineffective by failing to object to the introduction of the cell-site data records on Fourth Amendment grounds requires an evidentiary hearing to resolve.

### v. Counsel's Alleged Ineffectiveness at the Plea Stage of Petitioner's Proceedings

Petitioner next alleges that he "was deprived of his constitutional right to the effective assistance of counsel at the plea stage of the criminal proceedings." (Doc. # 1 at 21). Petitioner

claims that he "was never apprised about the advantages and disadvantages of going to trial versus seeking a plea deal" and that counsel "never discussed any plea offers or possible plea negotiations with him." (Doc. # 1 at 22). Indeed, Petitioner offered sworn testimony that his attorney "never presented [him] with a plea offer from the government" and suggested that a plea agreement was "out of [the] question." (Adams Aff. ¶¶ 3-4, Doc. # 19 at 16). The government counters that it *did* make offers directly to Petitioner in exchange for a guilty plea and that Petitioner rejected them with full knowledge of a potential life sentence. (Doc. # 9 at 12).

A movant arguing that counsel was deficient in failing to inform him of a plea deal "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial." *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Further, to establish prejudice, a petitioner must show that

> but for the ineffective assistance of counsel, a reasonable probability existed that: (1) the plea offer would have been presented to the court (i.e., the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) under the offer's terms, the conviction or sentence, or both, would have been less severe than under the judgment and sentence that were, in fact, imposed.

*Carmichael v. United States*, 966 F.3d 1250, 1259 (11th Cir. 2020) (citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

Here, the court again faces conflicting accounts. The government does not deny offering Petitioner a plea deal; to the contrary, it maintains that it offered Petitioner a plea deal directly, but he rejected it. Petitioner denies that he was informed of a plea deal that would result in less than the mandatory life sentence that awaited him upon conviction at trial. Were he informed of such a deal, Petitioner alleges, he undoubtedly would have taken it. (Adams Aff. ¶ 5, Doc. # 19 at 16).

11

Because this disagreement cannot be resolved by the court on the papers (as there are disputed facts in the record), an evidentiary hearing is required.

**B.     Prosecutorial Misconduct**

In addition to his claims of ineffective assistance of counsel, Petitioner asserts three claims of prosecutorial misconduct. First, he argues that the government's introduction of evidence as to prior arrests in Louisiana was improper because it was "highly inflammatory and prejudicial." (Doc. # 1 at 26). Second, he contends that prosecutors knowingly presented false testimony when they failed to correct key witnesses' assertions that they were not promised anything in exchange for their testimony. (*Id*. at 27). Finally, he alleges a *Brady* violation because the government failed to disclose that none of the calls on a key witness's call log were to or from Petitioner. (*Id*. at 28). The government counters that these claims are procedurally defaulted because Petitioner did not raise them at trial or on appeal. (Doc. # 9 at 16).

"Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. § 2255 challenge." *Black v. United States.*, 373 F.3d 1140, 1142 (11th Cir. 2004) (citing *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised [under § 2255] only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' … or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar" if the arguments counsel allegedly failed to raise were "significant enough to have [a]ffected the outcome of his appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989)).

The court first considers Petitioner's claim of prosecutorial misconduct stemming from the introduction of allegedly prejudicial 404(b) evidence. At trial, Petitioner's counsel preserved Petitioner's objection to the evidence's introduction. (Doc. # 77 at 13). The court then explained to Petitioner that (1) the evidence was being admitted solely to establish lack of mistake, and (2) his counsel's lack of objection to its introduction was a tactical decision rather than a failure to perform competently. (*Id*. at 16-22). Petitioner did not raise the issue on appeal, which he attributes to ineffective assistance of counsel. (Doc. # 19 at 10). However, even assuming there was ineffective assistance of counsel (which the court has substantial doubts about), the issue is unlikely to have altered the Eleventh Circuit's holding had it been raised on appeal. Even if the Eleventh Circuit found that the evidence of Petitioner's prior arrests was unduly prejudicial, there was ample evidence in the form of witness testimony and cell-site data records to establish Petitioner's intentional involvement in the conspiracy. Thus, because the introduction of evidence regarding Petitioner's prior arrests was simply not "significant enough" to have altered the result in this case (or on appeal), Petitioner cannot establish cause under *Nyhuis* and therefore is procedurally defaulted from bringing this claim.

The court next turns to Petitioner's claim alleging that the government knowingly presented false testimony. Because he does not argue actual innocence, the court again applies the *Nyhuis* standard and, in doing so, must resolve whether Petitioner has established cause in order to overcome a procedural default. Petitioner argues that Marcus Lampkin, Donald Hutchinson, and Danny Lamkin -- all key government witnesses -- gave false testimony. (Doc. # 1 at 27-28). He asserts that each witness lied to the jury by denying that they had been offered any reduced sentence in exchange for their testimony against Petitioner. (*Id*.). Petitioner does not explicitly

connect this allegation to any ineffective assistance of counsel claim. But to advance such a claim, he must overcome his procedural default. Again, the *Nyhuis* standard comes into play here.

Petitioner's counsel cross-examined each witness as to whether they were receiving any benefit in exchange for their testimony. (Doc. # 76 at 67-70); (Doc. # 77 at 184-85; 89-99). The jury heard the testimony and cross-examinations of each of these witnesses, and then convicted Petitioner. Raising that issue on appeal likely would have been fruitless, as the court "must sustain a jury verdict if, taking the view most favorable to the Government, there is substantial evidence to support it." *United States v. Vomero*, 567 F.2d 1315, 1316 (5th Cir. 1978)[3] (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)). Therefore, failure to raise the issue of false testimony on appeal does not constitute ineffective assistance of counsel, and Petitioner cannot establish sufficient cause to overcome procedural default.

Finally, Petitioner alleges that the government committed a *Brady* violation by failing to disclose that none of the calls captured in Marcus Lamkin's call log were to or from Petitioner. (Doc. # 1 at 29) (citing *Brady v. Maryland*, 373 U.S. 83 (1963). This argument misses the mark. "Though the prosecution must produce certain exculpatory evidence to the defense under *Brady*, it is under no duty to actually present that evidence on movant's behalf at trial or sentencing. That duty lies with the defense." *Rushing v. United States*, No. CV607-084, 2008 WL 410362, *5 (S.D. Ga. Feb. 12 2008) (internal citations omitted).

Prosecutors satisfied their *Brady* obligations by producing the call logs in question. (Docs. # 44-7, 44-8, 44-9, 44-10, 44-11). Indeed, they listed the call logs on their exhibit list and subjected their evidence to scrutiny in open court. In doing so, they afforded Petitioner the opportunity to

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981 constitute binding precedent in the Eleventh Circuit).

address and emphasize any potentially exculpatory information contained therein. Indeed, Petitioner's counsel did just that: she elicited an admission from the government's witness on cross-examination that there were no captured communications between Petitioner and Lampkin. (Doc. # 78 at 80). Petitioner's claim of a *Brady* violation is without merit.

**IV.    Conclusion**

For the reasons stated above, Petitioner's claims alleging ineffective assistance of counsel for failure to conduct a proper investigation, failure to propose a jury instruction on venue, and failure to move for a continuance in anticipation of the First Step Act, are due to be denied. Additionally, Petitioner's prosecutorial misconduct claims are without merit and also due to be denied. An evidentiary hearing is required to rule on Petitioner's claims of ineffective assistance of counsel for failure to object to the introduction of cell-site data records and to properly negotiate or communicate a plea deal. A separate order reflecting this memorandum opinion will be entered concurrently.

**DONE** and **ORDERED** this December 15, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE